LOUIS D. GAMACHE, SAMUEL AND LEONORE GAMACHE, BY GUARDIAN, WILSON PRIMM, LOUIS PRIMM, JOHN CAVENDEN, AND ABBY P. TRUE, PLAINTIFFS IN ERROR, *v.* FRANCOIS X. PIQUIGNOT, AND THE INHABITANTS OF THE TOWN OF CARONDELET.

In 1812, Congress passed an act (2 Stat. at L. 748) entitled "An act making further provision for settling the claims to land in the territory of Missouri." It confirmed the titles to town or village lots, out lots, &c., in several towns and villages, and amongst them the town of Carondelet, where they had been inhabited, cultivated, or possessed, prior to the twentieth day of December, 1803.

In 1824, Congress passed another act, (4 Stat. at L. 65,) supplementary to the above, the first section of which made it the duty of the individual owners or claimants, whose lots were confirmed by the act of 1812, to proceed within 18 months to designate their lots by proving cultivation, boundaries, &c., before the recorder of land titles. The third section made it the duty of this officer to issue a certificate of confirmation for each claim confirmed, and furnish the surveyor-general with a list of the lots so confirmed.

This list was furnished in 1827.

Afterwards, in 1839, another recorder gave a certificate of confirmation; an extract from the registry showing that this second recorder entered the certificate in 1839; and an extract from the additional list of claims, which addition was that of a single claim, being the same as above.
These three papers were not admissible as evidence in an ejectment brought by the owners of this claim. The time had elapsed within which the recorder could confirm a claim.

THIS case was brought up from the Supreme Court of Missouri by a writ of error issued under the 25th section of the Judiciary Act.

It was an action in the nature of an ejectment brought by the plaintiffs in error, for the recovery of a tract of land described in the declaration as survey No. 120 of the out lots and common field lots of the village of Carondelet.

The substance of the two acts of Congress of 1812 and 1824 is given in the caption of this report, and need not be repeated.

Upon the trial, the plaintiff offered the three following pieces of evidence, all of which were rejected by the court. There was much other evidence offered both by the plaintiffs and defendants; but as the opinion of this court turned chiefly upon the propriety of this rejection, the other pieces of evidence, and instructions of the court founded thereon, will be omitted. It will be perceived that each one of the three purports to derive its efficacy from the certificate of Mr. Conway, in 1839.

The plaintiffs then offered in evidence the following certificate of confirmation of the recorder of land titles of Missouri, as follows, to wit: (Indorsed on the outside "Jno. Bte. Gamache, sen., 6, by 40 arpens, field of Carondelet. Fees $1, paid.") John Baptiste De Gamache, sen., or his legal representatives, claims an out lot, adjoining the village of Carondelet, containing six arpens in front by forty in depth, bounded, northerly, by the common fields; eastwardly, by the Mississippi River (leaving a tow between it and the river); south, by an out lot claimed by the legal representatives of. Gabriel Constant, (lalmond,) sen., an[d] west by the land formerly the property of Antoine Riehl.

John Baptiste Maurice Chatillon, being duly sworn, says he knows the land claimed, and that he is about sixty-six years of age, and that he was born in Kaskaskia, and A. D. seventeen hundred and eighty-eight he removed from Ste. Genevieve to Carondelet, where he has resided ever since; that A. D. seventeen hundred and ninety-seven or ninety-eight he was employed by John Baptiste Gamache, sen., to fence in a field which said Gamache had been clearing, and working for about two years within this field lot; and he, this respondent, says, he did fence in about three arpens of this land, and did build a cabin on the same at this time; and this deponent further says that Gamache did cultivate this same field for five or six years until his death;

and this deponent further says he always understood this land was owned by said John Baptiste Gamache.

his<br>
JOHN BAPTISTE MAURICE ⋈ CHATILLON.<br>
mark.

Sworn to before me, July 6th, 1825.

THEODORE HUNT, *Recorder L. T.*

Translated to witness. J. V. GARNIER.

RECORDER'S OFFICE,<br>
ST. LOUIS, Missouri, 22d *January*, 1839.

I certify the foregoing within to be truly copied from book No. 2, page 46, of the minutes of the proceedings of the recorder of land titles in the State of Missouri, under the act of Congress of the 26th May, 1824, entitled "An act supplementary of an act passed on the 13th day of June, 1812," entitled "An act making further provisions for settling the claims to land in the territory of Missouri," all of record in this office, and confirmed by the act of 13th June, 1812, above cited.

F. R. CONWAY,<br>
*U. S. Recorder of Land Titles in the State of Missouri.*

To DANIEL DUNKLIN, Esq.,

U. S. Surveyor of Public Lands, St. Louis, Mo.

Together with a certified extract from the registry of certificates from the office of the recorder of land titles as follows, to wit:

*Registry of Certificates of confirmation on town lots, out lots, and common field lots, issued by the Recorder of Land Titles.*

| In whose name issued. | Date. | Situation. | Remarks. | Quantity. |
|---|---|---|---|---|
| The following claim was omitted by Mr. Hunt, late recorder, in furnishing the list of claims proven up before him, to wit: John Baptiste de Gamache. | 6th July, 1825. | Carondelet fields. | Bounded north by the common fields, eastwardly by the Mississippi, (leaving a tow [path] between it and the river,) south by an out lot claimed by the legal representatives of Gabriel Constant, (lalmond,) sen., and westwardly by the land formerly the property of Antoine Rheil. | |

The above claim entered by me in the book, 12th March, 1839, having this day furnished the surveyor-general with a description thereof.

F. R. CONWAY, *Recorder.*

RECORDER'S OFFICE,
ST. LOUIS, *January 23d,* 1851.

The above is correctly copied from the registry on file in this office.                    ADOLPH RENARD,
*U. S. Recorder of Land Titles in the State of Missouri.*

And also a certified extract from the list of claims proved before the recorder of land titles, under the act of 26th of May, 1824, (in which is contained the Gamache claim to which particular reference was made at this stage of the case,) transmitted by the recorder of land titles to the surveyor-general of the United States in Illinois and Missouri, certified from the office of the surveyor-general as follows, to wit:

(This was a list of cases transmitted by Mr. Hunt to the surveyor-general, as a supplemental report. The cases bear various dates, the last being 12th April, 1830. They were 16 in number. Then came the following, transmitted by Mr. Conway, accompanied by a certificate by him, dated 12th March, 1839, stating that it had been omitted to be furnished by his predecessor, Mr. Hunt.)

### No. 17 — *Not in list.*

John Baptiste de Gamache, senior, or his legal representatives, claim an out lot adjoining the village of Carondelet, containing six arpens in front by forty in depth, bounded northerly by the common, eastwardly by the Mississippi, (leaving a tow between it and the river,) south by an out lot claimed by the legal representatives of Gabriel Constant, (Lalamand) senior, and west by the land formerly the property of Antoine Rheil.

John Baptiste Maurice Chatillon, being duly sworn, says he knows the land claimed, and that he is about sixty-six years of age, and that he was born in Kaskaskia, and A. D. 1788, he removed from St. Genevieve to Carondelet, where he has resided ever since; that A. D. seventeen hundred ninety-seven or ninety (8) eight he was employed by John Baptiste Gamache, senior, to fence in a field — which said Gamache had been clearing and working in for about two years within this field lot — and he, this deponent, says he did fence about three arpens of this land, and build a cabin on the same, at this time. And this deponent further says, that Gamache did cultivate this same field for five or six years until his death. And this deponent

further says, he always understood this land was owned by said John Baptiste Gamache.

(Signed)  JOHN BAPTISTE MAURICE his ⋈ mark. CHATILLON.

Sworn to before me, July 6th, 1825.

(Signed)  THEODORE HUNT, *Rec'r L. T.*

Translated to witness by J. V. Garnier.

The plaintiff also offered in evidence a certified extract from Hunt's minutes, containing the entry of Gamache's claim, with a description of the lot; and also the evidence therein recorded, but the court refused to receive it; and also testimony to prove the inhabitation and cultivation of the lot prior to December, 1803, and until his death in 1805. There was also much other evidence which need not be stated in this report.

The defendants offered evidence

1. To show a title under the act of Congress, of 1812, as commons of Carondelet.

2. An adverse possession for twenty years.

3. Rebutting evidence.

After the evidence was closed various instructions were asked for both, by the counsel for plaintiff and defendant, some of each of which were given and some refused by the court, as the verdict was for the defendants, and the case was brought up by the plaintiffs, only those instructions and refusals to which they excepted, will be here stated.

*Instructions for plaintiffs refused.* 3. The jury are instructed that, as against such a claim and cultivation, or possession, as that mentioned in said second instructions, no adverse user as commons as a ground of title, under the act of Congress of 13th June, 1812, can prevail, unless such user existed in fact by an actual occupation and use as commons of the same ground, visible and continued, notorious, hostile, and exclusive, [and then] only to the extent that such actual occupation and use as commons existed, in fact, and to the exclusion of such claim and cultivation, or possession, by Gamache, of the same land as an out lot, or cultivated field lot, of the village, prior to the 20th day of December, 1803; provided the jury also believe, from the evidence, that the tract of land in the declaration described was claimed and inhabited, cultivated or possessed, by John B. Gamache, senior, prior to the 20th day of December, 1803, as an out lot or cultivated field lot of said village, with such a cultivation or possession as that mentioned in the said second instructions for the plaintiffs.

4. If the jury believe, from the evidence, that the claim of the village of Carondelet to commons, prior to the 20th day of De-

cember, 1803, was bounded north (in part) [by] the cultivated lands of the village, and that, prior to said date, the lot of land in said declaration described as having been claimed by Gamache was one of the cultivated lands of the village, then there is no conflict of title in this case, and the defendants have shown no title to the land in controversy.

5. The jury are instructed that, on the evidence given in this case, the statute of limitations is no bar to this action, unless they shall believe, from the evidence, that the town of Carondelet, or those holding under said town, have had an adverse possession in fact of the land in controversy in this case by an actual occupation on the ground, visible and continued, notorious, hostile, and exclusive, for at least twenty years next preceding the commencement of this suit.

7. The jury are instructed that the survey No. 120, and the plats and field notes thereof given in evidence by the plaintiffs, are evidence of the true location, extent, and boundary of the out lot of the village of Carondelet, claimed under John B. Gamache, senior, by his legal representatives.

8. The certified extract from the minutes of Recorder Hunt, taken under the act of Congress of 26th of May, 1824, [is] evidence that the tract of land therein mentioned and described was claimed and inhabited, cultivated or possessed, by John B. Gamache, senior, prior to the 20th day of December, 1803, and evidence that the same was confirmed to John B. Gamache, senior, or his legal representatives, by the act of Congress of 13th June, 1812.

9. The certified extract from [the] registry of certificates from the recorder's office, offered in evidence [by the plaintiffs, is evidence] that the out lot therein mentioned was confirmed to John B. Gamache, senior, or his legal representatives, by the act of 13th June, 1812.

10. The certified extract from the list of claims transmitted by the recorder of land titles to the surveyor-general, and certified from the office of the surveyor-general, relating to the claims of the legal representatives of John B. Gamache, senior, is evidence of said claim and the extent and boundary thereof, and that the same was confirmed by the act of Congress of 13th June, 1812.

11. The certificate of confirmation of the recorder of land titles in Missouri, given in evidence by the plaintiffs, shows a *primâ facie* title from the United States, in the legal representatives of John B. Gamache, senior, to the land therein described.

To which decision of the court, refusing said instructions, the plaintiffs by their counsel excepted.

The defendants then asked the following instructions, which were given by the court, as follows, to wit:

*Instructions given to defendants.* 5. If the jury find that the land spoken of by the witnesses as actually cultivated and possessed by Gamache did not embrace the land now in dispute, they ought to find for the defendants.

17. The survey No. 120, read by the plaintiffs, is no evidence of title, nor of the extent and boundaries of Gamache's claim.

18. The testimony taken before Hunt, and read in evidence by the plaintiff, is not to be regarded by the jury in the present case, the defendant insisting that the claim had been abandoned.

To the giving of which instructions the [plaintiffs] by their counsel excepted.

The verdict being for the defendants, the case was carried by the plaintiffs to the Supreme Court of Missouri, where the judgment of the court below was affirmed. It was then brought to this court by the plaintiffs, by a writ of error, issued under the twenty-fifth section of the Judiciary Act.

It was argued by *Mr. Holmes,* for the plaintiffs in error, and *Mr. Picot,* for the defendants.

Only those points will be noted which are connected with the decision of the court. The counsel for the plaintiffs in error made the following:

III. The certificate of the recorder of land titles, offered in evidence in this case, dated the 22d of January, 1839, was competent and admissible evidence of the facts necessary to give title under and by virtue of the act of 13th June, 1812, and showed a *primâ facie* title in the legal representatives of Gamache, of the date of that act, to the lot therein described. Macklot *v.* Dubreuil, 9 Mo. 489, a certificate issued in 1842 held good, and evidence of title; Boyce *v.* Papin, 11 Mo. 16; Hunter *v.* Hemphill, 6 Mo. 106; and Sarpy *v.* Papin, 7 Mo. 503, one in possession, merely, not showing a title, cannot question the certificate, or survey; Soulard *v.* Allen, (Sup. Court of Mo., Oct. term, 1853,) a certificate issued by Conway, since 1839, held good. The objection of the Supreme Court of Missouri to this case of Camache *v.* Piquignot is based on the omission of this claim in the first list sent to the surveyor-general. No limit of time was fixed by the terms, or spirit of the act, within which the certificate must be issued, after proof made within the eighteen months prescribed, or when the power of the recorder to issue it was to cease.

IV. The certified extract from the registry of certificates was competent evidence, that the certificate, authorized by the act

of 26th May, 1824, had been duly issued by the recorder of land titles, for the claim therein mentioned and described, and that the same had been confirmed by the act of 13th June, 1812.　McGill *v.* Somers, 15 Mo. 80; Biehler *v.* Coonce, 9 Mo. 351, an extract from this same registry of certificates held admissible evidence ; Roussin *v.* Parks, 8 Mo. 544.

V. The certified extract from the surveyor-general's list of claims proved was competent evidence that this claim had been officially reported to him by the recorder of land titles, as a claim that had been duly proved before him within the eighteen months, and that the surveyor-general had authority by law to survey it, as such.　McGill *v.* Somers, and other cases cited : the act of Congress of the 29th April, 1816, 3 Stat. at Large, 324, authorized the survey to be made.

VI. The certified extract from the books of Hunt's minutes of testimony, was competent and admissible evidence, for the purpose of showing, that whatever title the government had in this out lot, at the date of the act of 13th of June, 1812, as between the government and the claimants, had passed to the claimants; a matter in which the defendants, as third persons, had no interest and no concern, at least until they should show some prior or superior title to this land.　McGill *v.* Somers, 15 Mo. R. 80–86, extracts from these same "recorder's (Hunt's) minutes," and from the surveyor-general's list, held admissible evidence as good as the certificate itself.　Biehler *v.* Coonce, 9 Mo. 351 ; Roussin *v.* Parks, 8 Mo. 544.

1. On the same principle as a deed that constitutes a link in a plaintiff's chain of title, and to which the defendant may be no party nor privy ; and

2. On the principle of a deposition taken to perpetuate testimony, the government and the claimants being the only parties concerned in the effect of it, and both being present at the taking of it, by authority of the act of Congress.

3. Like a deposition, it is evidence tending to prove the existence of the facts prior to 1803, necessary to bring this out lot within the operation of the act of 1812, as a grant of title.

4. The Supreme Court of Missouri, (Gamble, J., delivering the opinion of the court in this case,) affected to treat this testimony of witnesses as if it had been some mere volunteer "affidavits" of the parties themselves, made extrajudicially, and without author ity of law.　In McGill *v.* Somers, the same judge (delivering the opinion of the court) held an extract from these same "minutes," to be evidence as good as the certificate.　In Soulard *v.* Allen, October term, 1853, Scott, J., delivering the opinion of the court, (Gamble, J., not sitting,) held a certificate of Conway (recorder) issued upon these "minutes" of testimony to be good evidence.

All the certificates that have been issued by Hunt or Conway, since the eighteen months expired, were necessarily based on these "minutes" of the proof made. Memory of three large volumes of proof was out of the question; and the surveyor-general s list was not a record of the recorder's office, otherwise than as Hunt's books of minutes were the original from which that list was drawn off as an abstract, in 1827.

5. Nothing had been done by any officer of the government at the date of the taking of this testimony, in relation to the claim of commons, that recognized any right or title of the inhabitants of the town of Carondelet to the land included in this outlet as commons.

The survey of the commons, No. 3102, and the outline survey of the common field, No. 3103, were made in 1834.

VII. The fact that this claim had been omitted in the first list furnished by recorder Hunt to the surveyor-general, and that it was not reported till the 12th of March, 1839, has no legal effect whatever on the title or any right of the claimant under the act of the 26th of May, 1824, nor upon the validity or admissibility of the above documents as evidence; for,

1. The entry of the claim in the books of Hunt's minutes as a claim proved and the certificate issued upon it, as such, are the proper legal evidence of the decision of the recorder of land titles upon the sufficiency of the proof made. Macklot v. Dubreuil, 9 Mo. 490: the recorder passed upon the facts referred to him when he issued the certificate; the point was made in Mr. Gamble's brief, that the recorder had no authority to issue a certificate in 1842, but it was not specially noticed in the opinion of the court, which held the certificate good.

2. The powers conferred and the duties imposed by the act were conferred and imposed on the recorder of land titles, (a perpetual officer,) and not upon Theodore Hunt, merely; he was expressly required, by the third section of the act, to issue such a certificate, and no limit of time was fixed by the act within which he was to make his decision on the proof taken within the eighteen months, or report the claims to the surveyor, or issue the certificate, nor in which his power to do so was to cease, otherwise than by a complete performance of the duties imposed on him. Act of the 26th of May, 1824, 4 Stat. at Large, 65.

3. The second clause of the third section of that act, requiring a list of claims proved to be furnished the surveyor-general, was merely directory, and imposed a ministerial duty only on the recorder of land titles, touching the internal administration of the land-office, and it was not intended by the act to be a condition precedent to the issuing of a certificate, nor even

to the right of the claimant to have a survey made of his claim, according to law, as a confirmed lot. Lytle *v.* State of Arkansas, 9 How. 314 — 333. Perry *v.* O'Hanlon, 11 Mo. 589–595: parties are not to be prejudiced by delays and omissions of merely ministerial officers and government agents. Taylor *v.* Brown, 5 Cranch, 234: a law requiring an officer to record surveys within two months, and return a list, is merely directory, and the validity of the survey is not affected, if not done. In point by principle and analogy.

4. The certificate containing an accurate description of the lot, so that any surveyor could find it, was all the evidence of title the claimants needed; and no public survey was necessary for them, though a convenience to them, as well as to the government.

Ott *v.* Soulard, 9 Mo. 603–4, where the calls are ascertained by the grant, the construction is then matter of law for the court. Menard's Heirs *v.* Massey, 8 How. 293, as to certainty of description, "*Id certum est,*" &c. Smith *v.* U. States, 10 Pet. 338: a grant is good if capable of definite location by its description, without a survey. Chouteau *v.* Eckhart, 2 How. 344: an act gives title, if the land can be identified as confirmed without resort to a survey. United States *v.* Lawton, 5 How. 10: the identity of the land granted may be established by the face of the grant, or by survey.

The proof made ascertains, (for the certificate,) designates, and proves the tract, which was granted by the act of 1812.

5. The list of claims proved was not required to be sent to the surveyor-general for the purpose of being the only and conclusive evidence for or against the claimants, nor was it made so by the terms or nature of the act, either of the fact that a claim had been proved and a certificate issued, or of the recorder's decision on the proof; nor was it of any importance to the claimant whether the claims were all reported at once or not; but the first list was sufficient information and good evidence for the surveyor-general of what it contained, and the supplementary lists were likewise good evidence, and sufficient to authorize a survey to be made of the claims reported, when reported.

6. No limit of time was fixed within which, if claims proved were not reported, they should never be reported at all. One object of the act was to get information for the surveyor-general, and obviously, the sooner he got it, and the whole of it, the better.

7. When the first list had been furnished to the surveyor-general, nearly two years after the expiration of the 18 months prescribed for the taking of the proof, (then supposed by the

recorder to contain all,) and when, by supplementary lists, the omissions had been supplied, and the errors corrected, the act of Congress had then only, and not before, been fully and substantially complied with, in this repect.

8. Any merely extra-legal inference to be drawn from the fact of the omission is rebutted by the fact, that there were other omissions and errors, certified by Hunt himself to have been errors in transcribing the former list from the books in his office, (Hunt's minutes,) and conclusively rebutted, by the fact that a certificate was issued; for if the recorder's opinion had been against the claim, at first, the issuing of a certificate shows that he had changed that opinion, and was satisfied with the proof.

9. The omission and delay have prejudiced nobody. The lot has not been set apart for schools, as a vacant lot, nor would it have been included in the survey of the commons, by Brown, if the commons belonging to the village had been surveyed according to their claim and confirmation, as directed by the 2d section of the act of 26th May, 1824, nor if he had consulted the records of the recorder's office, and the proof there made of this claim, as he ought to have done.

This out lot was surveyed by Brown, at the same time, and under the same instructions, as the other town lots, out lots, and common fields of Carondelet, (in 1839.) Brown might as well have included other common fields as this one in his survey of commons, in 1834. Many of them were never proved before the recorder.

The counsel for the defendant in error made (amongst others) the following points : —

I. The list returned by recorder Hunt, (certified to include a description of all the lots proved up before him,) which does not include a description of the Gamache claim, is conclusive against the plaintiffs. 3d sec. act of May 26, 1824, Statutes at Large, vol. 4, p. 66.

1. Whether, if the plaintiffs had a certificate of confirmation issued by Hunt for their claim, they could dispute the correctness of the list need not be inquired into, seeing that the plaintiffs have no such certificate.

The statute, however, designated two distinct matters of evidence which it would seem were both required to be possessed by a party claiming the benefits of the law. First, the certificate. This was intrusted to the claimant, whose claim was confirmed, and the plaintiffs should either have produced the certificate, or at least shown that it was issued. Second, the list. This was retained by the government as the record of what was confirmed; and the plaintiffs should have shown

that it included their claim. In this case it appears, affirmatively, that no such certificate was ever issued, and that neither the list nor the copy thereof embraces this claim.

2. It is not necessary, for the disposal of this case, to inquire into the validity of the acts of recorder Hunt in making supplemental and explanatory returns to the surveyor, subsequent to his return of the list required by law, seeing that the plaintiffs' claim is not included in any such return. Whether such acts were valid or not, they are cumulative evidence against the claim of plaintiffs. They go to show, that even after reviewing and revising his decisions, the recorder persevered in his rejection of the claim of Gamache's representatives.

3. The recorder expressly certified that the list contains all the lots confirmed by him. Courts cannot look behind that list. Similar lists have always been considered as binding on the ministerial departments of the government.

4. In the list are included numerous claims, proved before, and certified by the recorder as confirmed, and which were embraced within the limits of the claim. He must necessarily have decided against the Gamache claim in deciding in favor of the adversary claims.

The recorder acted in a judicial capacity in the execution of the extraordinary duties imposed on him by the act of 1824, and his decisions are *res adjudicatæ.*

II. The certificate of confirmation issued by recorder Conway in 1839, is merely void.

1. It is void on its face.

2. It is void for want of jurisdiction. The general powers of the recorder, as denoted by his title, are purely clerical, and are set forth in the law creating the office. See sections 3 and 4 of act of March 2, 1805, Statutes at Large, vol. 2, p. 326.

The powers given to the recorder by the act of 1824, were extraordinary and judicial. Upon their execution the office as to such extraordinary powers became *functus officio.* The powers, if not exhausted, ceased by limitation. First, eighteen months from the passage of the act, the power to receive claims and evidence, expressly ended by the terms of the first section.

The second section, although confined to regulating the duties of the surveyor, looks to a prompt determination of the duties of the recorder. How could the surveyor, immediately after the expiration of the eighteen months, designate the vacant lots, (namely those not certified and listed by the recorder as confirmed) unless the recorder had previously performed those duties?

The third section contemplates the issuing of the recorder's certificates within the eighteen months. After providing for

them, it proceeds to require, further, that so soon as the said term shall have expired, the recorder shall furnish the surveyor with a list of the lots so proved. The list was designed to embrace the certified lots only. The act contemplates the impossibility of the recorder preserving in his breast during a term of near eighteen months, the remembrance of many hundreds of decisions, and points out the certificates, or registry thereof, as the record which he shall preserve of the lots " so proved," and from which he is to compile his list. The making and transmitting the list was the final act. That done, the powers conferred by the law ceased.

Secondly. Although the office and general powers of the recorder are perpetual, yet special and temporary powers given for a particular purpose, will not endure forever.

Granting that the powers conferred by the act of 1824, were not simply conferred on Hunt, the recorder for the time being, but on his office; yet to have authorized Conway, or any successor, to have issued a certificate of confirmation, such successor should have succeeded to the office during the prescribed term of eighteen months, and the proof must have been made before him.

3. The head of the land department on the appeal of the plaintiffs, has decided that the proceedings of Conway were of no avail under the law.

III. The abstract from the registry of confirmations issued by Conway, is void.

The certificate itself being a "mere nullity" as declared by the Supreme Court of Missouri, the fact that it was issued, and when, is of no importance. Its only use in the case is to show affirmatively, what might otherwise appear only negatively, that recorder Hunt issued no certificate of confirmation.

IV. The extracts from Hunt's minutes are not evidence.

1. Hunt was not a commissioner to take testimony, and the affidavits were received without notice, the co-defendant in this suit being then in the actual possession of the land.

2. The act required no recorded or written proof before the recorder, and the circumstance that affidavits were taken by Hunt, touching the Gamache claim, is no evidence that he considered it as proved to have been inhabited, cultivated or possessed, prior to the 20th December, 1803, and that the land claimed was an out lot.

3. On the contrary, the circumstance that the claim was not entered in his list, is decisive to show that he was not satisfied with the proof.

V. The return of the description of the Gamache claim to the surveyor, by Conway, in 1839, was merely null, and afforded no evidence of title whatever.

The abuses to which such a practice will lead are manifest. If Hunt's list may be altered after twelve years have elapsed, alterations may be made at any distance of time; if future recorders may supply fancied omissions, they may strike out such claims as they may regard as erroneously entered; if they can thus deal with the list of Hunt, they can do the same with Bates's confirmations, and the numerous land titles depending on the action of the recorders of former days, will lie at the mercy of officers, selected not for their capacity to judge of the proofs of titles, but for their fidelity in taking care of books and papers.

Mr. Justice CATRON delivered the opinion of the court.

This case was brought here by writ of error to the Supreme Court of Missouri, and presents questions alleged to be cognizable in this court under the 25th section of the Judiciary Act. The plaintiffs claimed a tract of land of six arpents in front, and forty back, lying adjoining to the village of Carondelet, in Missouri. It was claimed as "an out lot" which had been confirmed by the act of Congress of June 13th, 1812, to John B. Gamache, the ancestor of the plaintiffs.

In support of this position there was offered, in evidence, certain documents issued from the office of the recorder of land titles. The first was a paper claimed to be a certificate of confirmation issued by Conway, the recorder of land titles, dated 22d January, 1839, under the act of Congress of the 26th May, 1824. The second was an extract from the registry kept by the recorder of certificates, issued by him under the act of 1824, by which it appears that Conway entered the certificate of Gamache's representatives on that register on the 12th March, 1839, and furnished on that day to the surveyor-general a description of the land. The third was an extract from the additional list of claims furnished by the recorder to the surveyor-general on the 12th March, 1839, which addition was of the Gamache claim alone. There were other documents showing that Hunt, who was the recorder of land titles, who acted under the act of 1824 in taking proof of claims, and who filed with the surveyor the list of claims proved before him, had filed one or two supplemental or explanatory lists after the first.

The court below rejected the evidence offered.

A survey of the claim of Gamache was made by a deputy surveyor under instructions from the surveyor-general, and the survey being returned to the office by the deputy and a plat made, the word "approved" was written upon it and signed by the then surveyor-general, but it never was recorded. It appeared, in evidence, that the practice of the surveyor's office,

when a deputy surveyor made return of a survey which he had been instructed to make, was, to have the survey examined, to see the manner in which the deputy had followed the instructions given, and if he had followed them, his work was approved, and the approval evidenced by such writing as had been made in this case, which was intended to authorize the payment of the deputy for his work; and that subsequently the survey was more carefully examined, and if found to be a proper survey in all respects it was recorded in the books of the office, which was the evidence that it was finally adopted and approved, and that by the practice of the office certified copies of surveys were not given out until they were thus finally approved and recorded. Conway, who had been surveyor-general as well as recorder, testified that he would regard the survey of the Gamache claim as an approved survey, and would record it as such if he were in the office.

It appeared, in evidence, that the present surveyor-general refused to record it as an approved survey, or to certify it to the recorder as a survey of land for which a certificate of confirmation is to issue, and that in that refusal he is sustained by the department at Washington.

After the evidence was closed, the court, by an instruction, declared that the survey was not evidence of title, nor of the boundaries and extent of Gamache's claim.

A certified copy of the affidavits made before recorder Hunt, when he was taking proof under the act of 1824, was in evidence, but an instruction given to the jury substantially excluded them from consideration.

On this state of facts the Supreme Court of Missouri held, among other things, as follows:

" In the present case we have a recorder of land titles, fourteen years from the passage of this act, attempting to give the evidence of title, by issuing a certificate of confirmation, and certifying the claim to the surveyor-general as one confirmed by the act of 1812. If the government of the United States has confirmed the title set up by the plaintiffs by that act of Congress, then the party, as has been held in this court, does not lose his land by the failure to procure the evidence provided for by the act of 1824; and under these decisions the plaintiffs in this case, after the evidence was rejected, which they claimed was rightly issued under the last-mentioned act, proceeded to prove the cultivation and possession of their ancestor, Gamache, and claimed that the title was confirmed by the act of 1812."

" If the evidence of title, purporting to be issued under the act of 1824, appeared undisputed by the United States, and acknowledged and treated by the government as effectual, then it may

be that a person who was a mere stranger to the title would not be allowed to dispute the correctness of the conduct of the officers in their attempt to carry out the law. But when we find that the government itself, in its own officers, arrests the progress of the title, and the whole reliance of the party in this case is upon the acts of the recorder, the correctness of which is denied by the government, we will examine his acts and give them effect only so far as they conform to the law."

" That the recorder, under the act of 1824, was required to act in a quasi judicial character, is perfectly manifest, although there was no mode provided by the law for the expression of an opinion against the sufficiency of the evidence given before him. If a claim was, in his judgment, confirmed by the act of 1812, he issued to the party a certificate of confirmation, and included the lot in the descriptive list which he was required to furnish the surveyor-general. If there was a failure to prove the inhabitation, cultivation, or possession to his satisfaction, he simply omitted to include the claim in his list, and he issued no certificate."

" The acts required to be done when a claim was confirmed, were to be done immediately after the expiration of the time limited for taking the proof; and when we see, from the evidence offered by the plaintiff, that the recorder filed his list of confirmations with the surveyor in October, 1827, near twelve years before Conway, his successor, returned the present claim to that office, we cannot avoid the conclusion that this latter act was not within the scope allowed for such proceeding by the act of Congress. It is not necessary to maintain that if Hunt, the recorder who took the proof, had died before he acted upon the claims, his successor could not act upon them; but when he did act, and made out and furnished to the surveyor the list required by law, the conclusion is one which the law draws, that claims not within that list are claims not proved to his satisfaction."

The claim of Gamache was anxiously prosecuted before the department of public lands at Washington during the pendency of this suit, and was there decided by the commissioner in conformity to the decision of the Supreme Court of Missouri; and which decision was confirmed by the Secretary of the Interior in September last. The reasons for this decision are here given in the language of the commissioner in reply to the plaintiffs' counsel, prosecuting the claim.

" The surveyor-general at St. Louis having declined to approve the survey as made by Brown for Gamache, and to certify the same to the recorder — You apply to this office to give orders to surveyor-general Clark, " requiring him to return the

survey of the tract of six by forty arpens in the name of John B. Gamache, sr., or his legal representatives, to the recorder of land titles, and that the recorder be directed to issue to 'you' a certificate of confirmation in the usual form, that 'you' may have the evidence of your title in the usual form for the purpose of prosecuting your rights in the courts having competent jurisdiction."

" In behalf of the representatives of Gamache it is maintained that they are confirmed by the act of 13th June, 1812.

" The first section of the supplemental act of 26th of May, 1824, made it the duty of the individual owners or claimants whose lots were confirmed by the act of 1812 on the ground of inhabitation, cultivation, or possession prior to the 20th of December, 1803, 'to proceed within eighteen months after the passage of the act of 1824,' to designate their said lots by proving before the recorder of land titles for said State and territory the fact of such inhabitation, cultivation, or possession, and the boundaries and extent of each claim, so as to enable the surveyor-general to distinguish the private from the vacant lots appertaining to the said towns and villages."

" The third section of the said act of 1824 made it the duty of the recorder to issue a certificate of confirmation for each claim confirmed, but further declares as follows :

"And so soon as the said term shall have expired, he shall furnish the surveyor-general with a list of the lots so proved to have been inhabited, cultivated, or possessed, to serve as his guide in distinguishing them from the vacant lots to be set apart as above described, and shall transmit a copy of such list to the commissioner of the general land-office."

"A report or list, purporting to contain all the claims proved up under the said act of 1824, was accordingly returned to this office in 1827, but that list does not embrace this particular claim of Gamache for 6 × 40 arpens within the limits of the Carondelet Commons.

We have no power to look behind that list in order to determine what has or has not been confirmed any more than we could look behind the face of a report of a board of commissioners or of the recorder, which had been confirmed by a law of Congress, and take cognizance of a case not embraced by such report, even if satisfied that it had been omitted by the reporting officer through inadvertence. This is a well-settled principle. See instructions to register and receiver, 13th April, 1835. 2d part Birchard's Comp. printed laws, instructions and opinions, page 757, &c.

"As the 3d section of the act of 26th of May, 1824, then expressly declares that the list to be furnished by the recorder

'shall serve as a guide' to the surveyor-general in the execution of the duties devolved on him by the act, and as it is not shown that the claim in question is embraced by that list, neither that officer, nor this office, has the power to treat the claim in question as confirmed and entitled to an approved survey, and, consequently, in my opinion, the commissioner has not the legal ability to comply with your application in the premises."

With the correctness of these decisions of the Supreme Court of Missouri and the department of public lands we entirely concur. Nor will we add any views of our own in support of the State decision, for the reason that the questions here presented are peculiarly local, being limited to the city of St. Louis and a few villages in the State of Missouri, the public at large having no concern with any question presented in this cause. And after due consideration we here take occasion to say, that although it is in the power of this court, and made its duty, to review all cases coming here from State courts of last resort, in which was drawn in question and construed prejudicial to a party's claim, the Constitution, or a law of the United States, or an authority exercised under them, still, in this peculiarly local class of cases asserting titles to town and village lots, confirmed by the act of 1812, we feel exceedingly indisposed to disturb the State decisions. So far the ability and soundness they manifest have commanded our entire concurrence and respect, and are likely to do so in future. It is proper further to remark that the jury was instructed, at the request of the plaintiffs, that inhabitation and cultivation of a part of the lot, claiming the whole, would be good for the whole within the meaning of the act of 1812.

The jury was also instructed, at the defendant's request, "that if the land spoken of by the witnesses as actually cultivated and possessed by Gamache, did not embrace the land now in dispute, they ought to find for the defendants."

In regard to these instructions the State court held that:

" The first instruction given for the defendant, if it stood alone, would be so entirely erroneous as to require a reversal of the judgment. That the jury should be required to find for the defendant, if the cultivation by the elder Gamache was not a cultivation of the precise piece of ground in controversy, would have been so gross a mistake, that neither the court nor the counsel asking the instruction could be supposed to have fallen into it. Accordingly, when we examine the second instruction given for the plaintiff, we find the court telling the jury that the cultivation of a part of a tract, under claim of the whole, was, under the act of 1812, a cultivation of the whole tract;

and, in looking into the case, we see that the controversy was whether this cultivation of Gamache was not on an entirely different tract from that now claimed to include the premises in dispute. " We are satisfied that the jury must have understood the question to be, whether the cultivation of Gamache, spoken of by the witnesses, was at any place upon the tract to which his heirs now claim title, or at some place upon an entirely different tract. In this view of the question submitted to the jury, there would be no propriety in reversing the judgment for the instruction given for the defendant."

The instructions asked by the plaintiffs, which were refused by the court, all refer to the proceedings in the recorder's office, the effect of which has been considered. On the whole it is ordered that the judgment be affirmed.

## *Order.*

This cause came on to be heard, on the transcript of the record, from the Supreme Court of the State of Missouri, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Supreme Court, in this cause, be, and the same is hereby affirmed, with costs.