## UNDERHILL *vs.* THE NEW YORK AND HARLEM RAIL ROAD COMPANY.

The admission of improper evidence, whenever it may have injured a party, is ground for a new trial.

Where, in an action to recover damages for the killing of the plaintiff's horses, upon the defendants' rail road, through the carelessness and negligence of the servants and agents of the defendants, the plaintiff examined but one witness as to that charge, and he effectually disproved it; *Held* that the judge erred in refusing to charge the jury that the plaintiff had wholly failed to prove the charge of carelessness and negligence; as the jury might have supposed, from such refusal, that there was some evidence going to show carelessness, negligence or improper conduct in the servants or agents of the defendants, and rendered a verdict against them upon that charge.

Where the complaint in such action averred that the plaintiff's horses had escaped from his close into the close of divers other persons between the plaintiff's land and the rail road, and the proof was that there was but one intermediate close; *Held* that this was not a fatal variance, the difference not being essential; and if it were essential, that an amendment was allowable.

Whether a rail road company, upon which it is obligatory to make side fences, which they have omitted to construct, are responsible for the destruction of horses that have wandered upon their track from the field of an adjacent owner, into which they had escaped from the land of their owner, through a defective fence which the adjacent owner was bound to make? *Quære.*

THIS was an action to recover damages for the killing of the plaintiff's horses, upon the rail road of the defendants, by the locomotive. The plaintiff, in the first count of his complaint, alleged that he was the owner of two horses, of the value of $500, and that the defendants were possessed of a certain steam carriage called a locomotive, which was under the care, government and direction of the defendants' servants, who were driving the same on and along the defendants' rail road, and that the defendants, by their said servants, so carelessly and improperly drove, governed and directed the same, that they ran over, struck and killed the plaintiff's horses; and that by means of the premises the plaintiff was forced and obliged to pay out and expend large sums of money in procuring other horses. The second count alleged that the plaintiff was lawfully possessed and in the occupation of a certain close, piece or parcel of land, situate &c., and the defendants were possessed of, and in the occupation of a certain other close, piece or parcel of land, situate &c., and contiguous to and ·next adjoining the plaintiff's close; and that the defendants, by reason of their possession of their said close, of right ought to have repaired and amended, and still of right ought to repair and amend the fence between the said close of the plaintiff and between the close of divers other persons whose land adjoins the defendants' said close, to prevent cattle lawfully feeding and depasturing, or being in those closes from erring and escaping from and out of the one into the other of said closes through the defects and insufficiencies of the fences which the defendants ought to repair and amend, and doing damage in those respective closes; yet that the defendants wrongfully and unjustly suffered and permitted the said fences between the said close of the plaintiff and the said close of divers other owners of land and the said close of the defendants to be and continue ruinous, prostrate, fallen down, out of repair, &c. whereby the

plaintiff's horses, lawfully feeding and depasturing in his said close, on &c., went, erred and estrayed from and out of the same, and through the defects, and the want of a fence along the said close of the defendants, and were run foul of, struck and killed with a certain steam carriage of the defendants. The third count alleged that the defendants were possessed of a certain close lying near to, and in the immediate vicinity of the plaintiff's close, which said close of the defendants was occupied by them for the extension of their rail road from the Harlem river through the county of Westchester, by means of which occupation the defendants were bound to repair fences, &c. ; and their neglect to do so, was alleged, and the killing of the plaintiff's horses, on the rail road, in consequence of such neglect.

The answer was a general denial of the matters stated in the complaint.

The action was tried at the Westchester circuit in October, 1847, before Justice MORSE. It was proved that in May, 1846, a pair of horses belonging to the plaintiff were run over by a freight train of the defendants and killed ; that the Bronx river and Isaac Burpo's land lay between the plaintiff's land, where the horses were pastured, and the rail road ; that the rail road on the side next Burpo's land was not fenced so as to exclude cattle or horses from straying upon the rail road from Burpo's land. It appeared by the tracks of the horses that they crossed the Bronx river, from the plaintiff's pasture, climbed the bank and passed on to Burpo's land at a place where two or three lengths of the fence between Burpo and the river were gone, and thence crossed Burpo's land and so got upon the rail road track, at the place where there was no fence.

Lyman Seely, a witness produced on the part of the plaintiff, testified that he knew a pair of horses, the horses in question ; he sold the plaintiff the horses ; sold him one in the summer of 1839, and the other in December, 1839, or January, 1840. The plaintiff offered to prove by this witness, what the horses in question were worth in 1840, which was objected to as irrelevant, by the counsel for the defendants ; whereupon the plaintiff's counsel said he should follow up the proof by the testimony

of the witness, that he had frequently seen the horses since, and up to the time of their being killed. His honor the circuit judge overruled the objection, and admitted the testimony; and to his opinion and decision the counsel for the defendants excepted. The witness then stated that the horses were worth, at the time he sold them, $275; which was the price the plaintiff gave for them; one was 7 and the other 6 years old when the plaintiff bought them. Witness did not see the horses frequently after the sale: saw them a few times; don't recollect how long before they were killed that he saw them. The counsel for the plaintiff then put to the witness this question: Did you see the horses within a year before they were destroyed? To which question the counsel for the defendants objected, stating that the inquiry ought to be restricted to some time near to the time when the horses were destroyed. His honor the circuit judge overruled the objection, and to his opinion and decision the defendants' counsel excepted. The witness answered that he did not recollect of seeing them. The counsel for the defendants then moved the court that the previous answer of this witness, as to the price for which he sold the plaintiff these horses, be rejected on the ground that the plaintiff's counsel had not followed up that testimony as he had stated that he would do. His honor the judge overruled the objection, stating that it could go to the jury for what it was worth; and to his opinions and decision the counsel for the defendant excepted. This witness being asked by a juror what was the value of the horses when they were killed, answered that he did not know. Ephraim Dunning, another witness called by the plaintiff's counsel, stated that in May, 1840, he was freight agent for the defendants from White Plains to New York; knows where Isaac Burpo's land is, and the culvert between him and Badeau. In the latter part of the month of May, 1846, a pair of horses were run over by the freight train of the defendants; he was in the forward car next the engine; the rail road on the west was not fenced from the adjoining land. By the appearance they struck the horses in the culvert. The culvert was 12 feet span. It killed the horses; a man by the name of Watson was running the engine

at the time for the defendants. Being cross-examined, he stated that they left White Plains at about half past 12 at night, and about an hour afterwards they struck the horses. When they left the Plains it was very dark and misty, and threatening rain; and continued dark until about half an hour after striking the horses, and then it commenced raining hard—that it was as dark a night as he ever saw. That he should not think they were running over 8 miles an hour, if that. Had been running very cautiously and easily, uncommonly slow and with care.

The counsel for the plaintiff having rested his cause, the defendants' counsel moved that the plaintiff be nonsuited, because, 1. The plaintiff has failed to show that the defendants carelessly and improperly drove their engine; and that it was through their carelessness, negligence and improper conduct, that the plaintiff's horses were killed. And, therefore, the plaintiff has not sustained his action as set forth in the first count of his declaration. 2. Because the proof of the plaintiff does not sustain the cause of action as set forth in the second count of the declaration; as, in the second count it is alleged that the closes of the plaintiff and defendants join, and that the defendants were bound to support the fence between their close. When, from the testimony, it appears that the closes did not join, which was a material variance from the allegations contained in the second count. 3. Because the plaintiff has not sustained his cause of action as set forth in the third count, as in that count the plaintiff alleges that his horses escaped from his close into the closes of divers other persons, lying between the close of the plaintiff and the close of the defendants, when, from the testimony, it appears that there was but one close, viz. of Isaac Burpo, between the plaintiff's and defendants' closes. 4. Because the testimony does not show any cause of action against the defendants, for it is proved that the horses passed from the close of the plaintiff on to the close of said Burpo, through the insufficient fences of Burpo, and then over Burpo's land to the defendants' land, and therefore the horses were trespassers on the defendants' land, and if any injury happened to them, under the circumstances of this case, the plaintiff could not recover of the defendants, but

his remedy is against Burpo, by reason of his insufficient fence. 5. That if the horses (and such was the proof) were wrongfully on the defendants' close, and were injured through the carelessness of the defendants, yet this action would not lie, as the defendants were in the lawful exercise of their rights. But the circuit judge denied the motion for a nonsuit, to which opinion and decision the counsel for the defendants excepted, for the reason that each of said grounds for nonsuit was sufficient.

The counsel for the defendants then produced a witness who testified that he knew the horses of the plaintiff at the time they were killed; they were worth from fifty to sixty dollars a piece. The testimony was then closed, and the counsel for the defendants requested the judge to charge the jury that the plaintiff had not sustained his cause of action as set forth in the first count of his declaration, as he had not proved that the defendants drove their engine carelessly, negligently or improperly, but carefully, slowly and cautiously; but his honor the judge refused so to charge the jury, and the defendants' counsel excepted. The defendants' counsel further requested the judge to charge the jury, that the testimony of the plaintiff did not sustain the cause of action as set forth in the second count of his declaration, and the circuit judge so instructed the jury. The counsel for the defendants then requested the judge further to charge the jury, that the plaintiff had not sustained the third and last count in his declaration, because by the said count it was alleged that the plaintiff's and defendants' closes were separated from each other by closes of different owners, over which the horses in question passed to the defendants' close, when, by the evidence, it appeared there were not different owners of different lands between the plaintiff's and defendants' closes, but the land of Isaac Burpo only, and that the horses did not pass, as alleged in that count, from the plaintiff's close over the land of divers owners or of divers persons to the defendants' close, but that they passed over the land of Burpo only. The judge refused so to charge the jury, and the defendants' counsel excepted. The counsel for the defendants further requested the judge to charge the jury, that if the horses passed from the

Underhill *v*. New York and Harlem R. R. Co.

plaintiff's close, over the close of Burpo, on to the close of the defendants, the horses were trespassers on the defendants' land, without regard to the sufficiency of the intermediate fences ; but the judge refused so to charge the jury, to which the counsel for the defendants excepted. The defendants' counsel then request-ed the judge to charge the jury, that in turning his horses into his close, which was separated from the close of Burpo by an insufficient fence, two lengths of which were entirely gone, he, the plaintiff, was guilty of negligence, and if the horses strayed upon the defendants' land and were injured, he was not, under the proof in the case, entitled to recover ; but the judge refused so to charge the jury, to which the counsel for the defendants excepted. The counsel for the defendants then further re-quested the circuit judge to charge the jury, that the plaintiff was bound to keep his horses on his own close, and that if any part of the fence between the plaintiff's close and Isaac Burpo's close belonged to Burpo to make and keep in repair, the *onus probandi* lay upon the plaintiff to prove such fact, either by a decision of fence viewers, or by assignment be-tween the plaintiff and Burpo, or by prescription, which the plaintiff had not done, and therefore the horses were trespassers after going out of the plaintiff's close. His honor refused so to charge the jury, and the counsel for the defendants excepted. But the circuit judge, instead thereof, charged the jury,—1st. That in an action on the case for negligence, like the present, the plaintiff cannot recover if his own negligence has contributed to his own loss in the premises, unless the act by which the loss has happened was wanton, or the result of gross negligence on the part of the defendants. 2d. That the general rule of law in relation to the straying of domesticated animals from the premises of one man on to those of another is, that the owner of the animals is responsible for confining them upon his own land in all cases, unless there be a statutory provision, an agreement of the parties, or a prescription by which division fences are to be maintained. 3d. That there is evidence in this cause proper for you to consider, and from which you have a right to infer and find that the plaintiff was bound by agreement or prescription

to maintain one part of the fence between his land and Burpo's on his side of the river, and Burpo to maintain the other part of the fence on his side of the river. 4th. That the act of May 9, 1836, made applicable to the defendants by the act of May 7, 1840, provides that the defendants " shall erect and maintain sufficient fences upon the sides of the route of their road." If the defendants have not erected or maintained such fences along their road, and you find that the plaintiff's horses were killed through the neglect of the defendants to erect or maintain such fence opposite the land of the plaintiff, without any negligence on the part of the plaintiff other than in turning his horses into his own land, and their passing over the land of Burpo, through a defective fence between the plaintiff's land and Burpo's, and which Burpo was bound to keep in repair, and across Burpo's land on to the track of the defendant's rail road, there being no fence along the rail road there as required by said acts, then the plaintiff is entitled to a verdict for damages sustained in the loss of his horses. To which 4th point of said charge the counsel for the defendants excepted. The jury returned a verdict for the plaintiff for $110 damages and six cents costs.

*J. W. Tompkins*, for the plaintiff.

*C. W. Sandford*, for the defendants.

*By the Court,* S. B. STRONG, J. The judge before whom this action was tried clearly erred in permitting one of the plaintiff's witnesses to state what had been the value of his horses in 1839 and 1840, upwards of six years before they were killed, and what he had then paid for them, and in refusing to strike out such evidence when the witness failed to connect what he had stated with their value at the time of the accident. As there were exceptions to both the admission and refusal, we are bound to yield to them, unless we are satisfied that they did not by any possibility prejudice the defendants. Believing, myself, that the rule often operates unjustly, I have frequently endeavored to confine its operation within what I conceived to be rea-

Underhill *v.* New York and Harlem R. R. Co.

sonable bounds, but without much success, as our judges have generally thought that they were bound to apply it rigidly, and that the legislature alone could furnish the appropriate remedy. In this case, the evidence improperly admitted may have induced the jury to exceed the minimum price mentioned by the only other witness who testified upon that point; and therefore the defendants may have been (although they probably were not) injured, and for that reason they are entitled to a new trial.

I think, too, that the judge erred in refusing to charge the jury, conformably to the request of the defendants' counsel, that the plaintiff had wholly failed to prove the first count of the complaint, charging that the horses had been killed through the carelessness, negligence and improper conduct of the defendants' servants. The plaintiff examined but one witness as to that charge, and he effectually *disproved* it. He testified that the train ran over the horses shortly after midnight, when it was dark and misty—as dark a night as he ever saw—and that they were running very cautiously and easily, uncommonly slow, and with care. As the judge refused to instruct the jury that the plaintiff had failed to maintain his first count, they may have supposed that there was some evidence going to show carelessness, negligence, or misconduct in the defendants' servants, and rendered a verdict against them upon that charge. It is not probable that they did, but it is not always easy to account for the verdicts of juries, particularly against rail road companies; and as it is possible that the defendants have suffered by the omission of the judge to instruct the jury properly upon this point, they are entitled to a new trial on their exception as to that.

The defendants were wrong in their supposition that there was a fatal variance between the averment in the third count that the plaintiff's horses had escaped from his close into the close of divers other persons between the plaintiff's land and the rail road, and the proof that there was but one intermediate close. The difference was not essential; and if it had been, an amendment of the charge, making it strictly conformable to the proof, would have been then, and now, allowable.

The only point of much difficulty in the case is whether a rail

road company, upon which it is obligatory to make side fences, which they have not done, are responsible for the destruction of horses that have wandered upon their track from the field of an adjacent owner, into which they had escaped through a defective fence, which he was bound to make, from the adjoining land of the proprietor of those animals? The defendants were bound by their act of incorporation to fence their road. (*Laws of* 1836, *ch.* 268, § 8, *p.* 374.) The 44th section of the general rail road act of 1850 (*Laws of that year, pp.* 234, 235) provides that until the companies shall fence their roads they shall be liable for all damages which shall be done by their agents or engines, to cattle, horses or other animals thereon. In the construction of this act of 1850 we have decided that it did not prevent the applicability of the common law principle that one could not recover for a loss to which his own negligence and misconduct had essentially contributed. (*Marsh* v. *The New York and Erie Rail Road Company*, 14 *Barb.* 364.) If then the plaintiff in this case had wrongfully or negligently suffered his horses to escape and go upon the rail road, he would not be entitled to any redress. It is alleged that he was careless in turning his horses into a field when he must have known that there was no fence, or at any rate not a sufficient fence to prevent their escape on to that part of the rail road in the immediate vicinity. There was some carelessness in that, if the defect in the fence was known to the plaintiff, but the carelessness, so far as it related to the rail road, was by reason of the omission of the company to fence their road. If that had been done, there would not have been any exposure. I doubt, therefore, whether the defendants can avail themselves of a characteristic resulting entirely from their own wrong. Then as to the strict matter of right, the plaintiff was justified in turning his horses into his own field, although his adjoining neighbor's part of the partition fence was defective, and he was excusable if by reason of such defect they escaped into the adjoining field. Whether, if they passed beyond that, into another close, by reason of a culpable omission of the owner to fence it at all, he was still excusable, is a question of some difficulty. Ordinarily, where one

Underhill *v.* New York and Harlem R. R. Co.

is bound to fence at all, it is only as against an adjoining owner. If the cattle of others wander upon his land, although it may not be fenced at all, the owners are liable for the damage. They are considered to be guilty of a wrongful act, and that would prevent a recovery by them of any damage resulting from the trespass, or to which it had been essentially instrumental. Ordinarily, one is bound to adopt such measures as are necessary to secure his cattle upon his own land, and if they essape he is responsible for their wandering upon the land of any other than the adjoining proprietor who has neglected to make or repair his part of the partition fence. If there had been no provision relative to the construction of fences on rail roads, beyond that which I have quoted from the act of 1836, the liability thrown upon the defendants would have been simply to construct the whole fence, instead of a part of it only. That would not have extended it so far as to increase the privileges of others than those whose lands adjoin their road. Whether the general rail road act could confer additional private rights upon those whose property is not directly affected by the road, at the expense of those who have vested rights of property, under pre-existing laws, may be very questionable. I expressed an opinion, in the case of *Marsh* v. *The New York and Erie Rail Road Company,* that it was competent for the legislature to add the provision in question, as essential to the safety of passengers and freight. My brother Brown expressed a different opinion. I am unwilling to decide so important a question in a case where the point is not necessarily involved in the aspect in which it is presented to us.

Upon the first two points which I have considered there should be a new trial. Costs to abide the event of the suit.

New trial granted.

[DUTCHESS GENERAL TERM; April 8, 1856. *Brown, S. B. Strong* and *Rockwell,* Justices.]