## ARGUED AND DETERMINED

##### IN THE

# SUPREME COURT

##### OF THE

## STATE OF KANSAS.

#### DURING THE TERM COMMENCING AUGUST, 1869.

---

## THE U. P. R. W. Co., E. D., v. JOSEPH D. ROLLINS, *et al.*

### *Error from Jefferson County.*

1. REAL ESTATE: FEE.—Every person who owns real estate, in fee simple, is the exclusive owner, and is entitled to the exclusive possession thereof.
2. TRESPASS.—Any person who disturbs that possession by entering upon such real estate, or by allowing his cattle to do so, without the consent of the owner, is a trespasser.
3. ACTION: DILIGENCE.—Every owner of property, real or personal, before he can maintain an action to recover for injuries done to it, must show that he used reasonable and ordinary care and diligence, to protect it from injury.
4. FENCING EVIDENCE OF CARE: VESTED RIGHTS.—While the legislature of the state by enacting certain fence laws, and laws regulating the running at large of stock, have impliedly declared that such reasonable care and diligence with regard to real estate shall be to fence it with a lawful fence, and that no action shall lie for injuries done to real estate by roaming cattle, unless such lawful fence is made; yet they have nowh re attempted to enact any law, giving to any person any rights upon another's land, whether it is fenced or not. An act of that kind would tend to disturb vested rights and be unconstitutional and void.
5. NEGLIGENCE OF BOTH PARTIES.—It is not necessary, in order to enable a party to recover for injuries done to his property, caused by the negligence of others, that he should be entirely free from all negligence himself; but if his negligence is slight, and that of the other party is gross, or if his is remote, and that of the other is the proximate cause of the injury, he may recover.

6.   QUESTIONS OF LAW AND FACT: DEGREES.—It is a question of fact for the jury to determine whether there has been negligence, and its nature and degree; but it is a question of law for the court to determine what degree of care and diligence on the one side, and of negligence on the other, will entitle the plaintiff to recover.

7.   DEGREES OF NEGLIGENCE: LIABILITY.—Ordinarily, when a person allows his cattle to run on another's land, without the owner's consent, the owner of the land is not liable for any injuries the cattle received while there, unless the injuries are caused through his gross negligence. But when any person knowingly allows his cattle to run on the lands of a railroad company, in the vicinity of the railroad track, and thereby endangers the lives and property of passengers and others, he can recover only for injuries done to his cattle through the most gross and wanton negligence of the railroad company.

8.   ID.—In this case, the cattle of the plaintiff below were killed on the railroad track of the defendants below, by a train running over them. *Held*, that it was error for the court below to charge the jury that the defendants were liable if the cattle were killed through the *negligence* or want of *ordinary* care of the defendants.

9.   ID.—It was also error to refuse to charge the jury that the defendants below were not liable, unless the cattle were killed through the *gross* negligence of the defendants.*

The facts of this case are generally and pretty fully stated in the subjoined opinion of the court:

*Martin & Burns,* for plaintiff in error.

*D. H. Morse,* for defendant in error.

*For plaintiff in error,* it was submitted:

1.   There is no law in the State of Kansas, or in the charter of plaintiff's road, requiring the plaintiff to fence its track.   *See Charter, Statute of 1855, Page* 914.

2.   Where no statute regulation exists, defining the duties of railway companies, as to fencing, they are governed by the common law rule, and are under no obligation to erect fences between their road and adjoining

*1  DEFINITIONS: DILIGENCE:—Common, or ordinary diligence, is that degree of diligence which men in general exercise over their own concerns. Great diligence is extraordinary, that which very prudent persons exercise; and slight diligence is that which persons of less than common prudence exercise.

2.  ID.—NEGLIGENCE:—Ordinary negligence is the want of ordinary diligence. Slight diligence is the want of great diligence. Gross negligence is the want of slight diligence.

3.  COMMON LAW AS TO TRESPASS:—At common law the owner of land is not obliged to fence against stock, and the owner of trespassing stock cannot recover for injuries done thereto, unless the injuries be gross and wanton. The common law is the law of Kansas, perhaps modified by the laws regulating fences and stock.

lands.  1 *American Railway Cases*, 212, *note* 1; 5 *Denio*, 255;  4 *Comstock*, 349; 11 *Barb.*, 112; 13 *id.*, 594; 7 *Harris*, 298; 19 *Penn.*, 298; 16 *Ill.*, 198; 9 *Ind.*, 290; 14 *id.*, 317; 6 *id.*, 141.

3. *a*)  At common law the proprietor of land is not obliged to fence it.  Every man is bound to keep his cattle on his own land, etc.  1 *Redfield on Railways*, 499, *and authorities.*

*b*.)  The common law is in force in this state.  *Comp. Laws*, 678.

4.  The common law of England, with reference to fences and fencing, is not repugnant to or inconsistent with the constitution of the United States or of the State of Kansas or any statute law of the state.  2 *Mich.*, 259; 3 *Iowa*, 407.

5.  The statutes of this state requiring a person to keep a lawful fence, before he can recover damages done upon his premises.  Stray-laws, etc., do not change the common law, nor require persons or railway companies to fence their lands, but only preclude the recovery of damages in case they are not fenced.  2 *Mich.*, 259.

6.  Every unwarrantable entry by a person or his cattle on the land of another, is a trespass; and if cattle are suffered to go at large and are killed while trespassing on a railroad track, the company is not liable unless caused by the *wanton* and *reckless negligence* of the company.  5 *Denio*, 255; 19 *Johns.*, 385; 4 *Comst.*, 349; 7 *Harris*, 298; 16 *Ill.*, 198; 17 *id.*, 133, 541, 580; 24 *Ind.*, 402; 24 *Vt.*, 487; 28 *Ill.*, 513.

7.  The plaintiff in error has the exclusive right of way along its track, and is not bound by its charter or any law of the state to provide fences to keep out cattle. Hence if domestic animals wander on the track, whether

with or without the owner's knowledge, and are killed, without wantonness or gross negligence, on the part of the railroad company, its agents or employees, the company is not responsible for their death. 1 *Am. R. Cases*, 144, 210; 29 *Maine*, 307; 1 *Foster*, [*N. H.*] 363; 14 *Barb.*, 364; 22 *id.*, 574; 37 *id.*, 516; 16 *Ill.*, 198; 7 *Harris*, 298; 24 *Ind.*, 402; 44 *Penn.*, 375; 4 *Comst.*, 349; 2 *Metc.*, [*Ky.*] 177.

8.   Where there is negligence on the part of the owner of cattle killed, he cannot recover, and it is gross negligence for the owner of cattle to suffer them to run at large in the vicinity of a railroad, whether the same was fenced or not. 14 *Barb.*, 364; 13 *id.*, 493, 497; 19 *Wend.*, 399; 4 *Comst.*, 349; 2 *Mich.*, 259; 8 *Johns.*, 421; 1 *Cowen*, 78; 5 *Hill*, 282; 5 *Denio*, 255; 14 *Ind.*, 102.

9.   Where an animal is killed upon a railroad, through the fault of the owner, the company will be liable only for gross negligence, which implies willful injury. 28 *Ill.*, 513; 29 *id.*, 447; 30 *id.*, 117; 18 *Ind.*, 215 ; 22 *id.*, 26.

10.   An action for negligence cannot be sustained if the wrongful act of the plaintiff below co-operated with the misconduct of the defendant below, to produce the damages sustained. 4 *Comst.*, 349; 11 *Barb.*, 112; 5 *Denio*, 255; 5 *Barb.*, 238; 5 *Hill*, 282; 6 *id.*, 592; 21 *Wend.*, 615; 1 *Cow.*, 78; 14 *Barb.*, 364.

11.   The paramount duty of a railroad company, through its agents intrusted with the conduct of the train, is to look to the safety of the persons and property thereon, subordinate to which is the duty to avoid unnecessary injury to animals straying upon the road; and there is a peculiar obligation upon the owners of cattle to keep them off the track of railways, and if they are

found there, whilst railroad companies and their agents and servants are not allowed to omit *all* care, and willfully and wantonly injure them by running their engines and trains over them, yet companies are not to be held liable for injuries inflicted under such circumstances, unless it is proven that the conduct of the company or its agents has been reckless, wanton and willful.  2 *Metc.*, *Ky.*, 177.

12.  The rule of the common law of England, requiring the owners of domestic animals to keep them on their own land, or within enclosures, has never been in force in Ohio, Illinois, Iowa, Connecticut, Missouri, California.  3 *O. S. R.*, 172; 5 *Gillm.*, 130; 3 *Iowa*, 396; 14 *Conn.*, 293; 26 *Mo.*, 441; 12 *Cal.*, 535.

*For defendant in error, Morse* contended:

1.  The different statutory enactments of Kansas in relation to inclosures, strays, keeping up horses, mules and swine, damage done by freighters' stock, are repugnant to and inconsistent with the common law.  *Comp. L.*, 1862, 599–607; 842, 843, 485; *L.* '65, 91; *L.* '66, 248.  *Redf. R. W.*, 368.

2.  No such fault is to be imputed to the owners of these cattle, by permitting them to go at large upon the unenclosed lands of the railway company, as will prevent them from recovering in this action.  5 *Gilm.*, 130; 3 *Iowa*, 396; 5 *Iowa*, 490; 13 *Ill.*, 609; 10 *Iowa*, 396; 38 *Ill.*, 424; *Redf. R. W.*, 365; 3 *Ohio, St.*, 172; 14 *Conn.*, 293; 10 *Rich.*, 227; 4 *Ohio St.* 434 and 474; 13 *Ohio St.*, 67; 26 *Mo.*, 441; 12 *Cal.*, 535; 18 *Cal.*, 351; 13 *Wis.*, 137.

3.  These cattle are not trespassers; they *are free commoners*.  10 *Iowa*, 268; 3 *Ohio St.*, 172; 38 *Ill.*, 424; 5 *Gilm.*, 130; 36 *Mo.*, 441; 12 *Cal.*, 535; 18 *Cal.*, 351.

4.   The instructions in this case are in accordance with the rules laid down in Iowa and Ohio. · 10 *Iowa,* 268; 3 *Ohio St.,* 172; 13 *Ohio St.,* 67; *Redfield on R. W.,* 34; 6 *Allen,* 87, 92; 27 *Conn.,* 497; 21 *Iowa,* 20; *Iowa,* 188, 219; 16 *Iowa,* 6; 17 *Iowa,* 461; 26 *Mo.,* 441; 12 *Cal.,* 535; 18 *Cal.,* 351.

5. · The simple question is: Can the plaintiffs below recover when they show want of usual and ordinary care and caution on the part of the railway company?

6.   The cases referred to in the Iowa, Illinois, Ohio and Connecticut reports answer every objection urged by the plaintiff in error in this case.


*By the Court,* Valentine, J.


In this case the defendants in error, who were plaintiffs in the court below, sued the plaintiffs in error, for the value of five head of cattle.

It appears from the record in the case that the plaintiffs below allowed their cattle to run at large on the open uninclosed prairie, near the railroad track of the defendants.   The cattle roamed on the railroad track, and while there were killed by a train of cars of the defendants running over them.   The land over which the track run belonged, as is admitted by the parties, to the defendants, *in fee simple.*   It was not fenced at that place, and neither was the land adjoining it fenced.   The plaintiffs lived near the railroad, knew its condition and that trains were running daily upon it.   There was no evidence or claim that the plaintiffs owned, or were in possession of the land immediately adjoining that of the defendants.

There are a great many assignments of error in this case, but we think the whole of them, taken together, raise simply these general questions : What are the rights of the parties respectively on the premises where the accident occurred, and what degree of care and diligence should each have exercised there so as to avoid injuries to the property of themselves and the other parties ? And is the question of negligence one of fact for the jury, or of law for the court ?

DILIGENCE OF Owners.

We regard the maxim *sic utere tuo ut alienum non lædas*, as one tested by the wisdom and experience of ages, and founded in the eternal and immutable principles of equity and justice.

Every person must so use his own property as not to injure the rights of others. And under a humane and benign system of jurisprudence such as ours no one can be allowed to invade or infringe the rights of others with impunity. But this maxim, benign as it is, does not exempt or absolve any one, from being vigilant and watchful in the protection of his own rights.

The above doctrine in its practical application would probably be better expressed in these words: Every person, in his intercourse with others, is required to exercise that degree of care and diligence to protect his own rights and to avoid injury to the rights of others, which an ordinarily careful and prudent man usually exercises in his own affairs.

The rule thus expressed is of almost universal application. Whenever one person exercises ordinary care and diligence on his part, and does not infringe the rights of others, he has a right to claim the same rigid observance of the rule from them as he observes. It is only when he has violated the rule himself—when he has been

negligent of his duty to himself, or when he is a wrong-doer towards others, that there is any relaxation of the rule towards him.

It therefore becomes necessary for us to inquire into the relative rights of the parties in this case on the premises where the accident occurred. Who committed the first wrong? Who was guilty of negligence?

Or OWNER OF     It seems to us that every person who owns real
Fee.    estate, in fee simple, is the *exclusive* owner, and is entitled to the exclusive possession thereof; that no other person except the owner can have any *rights* there; and that if any other person disturbs the possession of the owner by entering upon the land himself, or by allowing his cattle to do so, he is a trespasser.

This case seems to have been tried by the plaintiffs in the court below upon the theory that, as to all uninclosed lands, the owner thereof is a mere tenant in common with every other person;—that a railroad company, for instance, are bound to run their trains with the same care and prudence as to roaming cattle as though the owners of the cattle were joint owners with them of the railroad. And the court below seems partially at least to have sustained this theory of the plaintiffs. The court charged the jury that cattle running at large upon the uninclosed land of another are *not trespassers;* that the owners of cattle have *by law a right* to so allow them to run at large for the purpose of subsisting and grazing. These instructions are erroneous. They all tended to mislead the jury. It is probably true that the plaintiffs, by allowing their cattle to run at large, committed no actionable trespass, no actionable wrong. But these instructions went further than that;—they tended to convey the idea to the jury that the plaintiffs committed

no trespass or wrong of any kind; that the plaintiffs below were simply exercising a right, given to them by law, to pasture their cattle on the lands of others.

COMMON LAW Doctrine. The common law of England is in force in this state, by statutory enactment, so far as it is not repugnant to or inconsistent with the constitution and statutes of this state and of the United States. [*Comp. L.*, 678.] At common law the owner of the land is the owner of the ground and of everything attached to it for an indefinite extent upwards and downwards. He has the exclusive right to possess and enjoy it, unmolested, and undisturbed. He is not obliged to fence against the cattle of other persons. The owner of the cattle is bound to keep them upon his own premises, and if they stray upon the land of his neighbor, whether the land is fenced or not, he is liable for any damage they commit while there. And he cannot in general recover for any injury they may receive while thus unlawfully there, unless the injuries are willfully or wantonly inflicted.

The plaintiffs, however, claim that the common law in this respect has been abolished by the custom of the country and by statute.

CUSTOM. As the common law has been adopted by statute and made the paramount rule by express enactment of the legislature, "any *custom or usage* to the contrary notwithstanding," [*Comp. L.*, 678,] we suppose it would take more than a custom of the country to repeal it.

PRESCRIPTION. Neither does this custom amount to a prescription. It lacks nearly all of the essential elements of a prescription. It has not been of sufficient

duration.   The possession of the plaintiffs has not been
long continued, peaceable, or without lawful interruption.
Neither does a prescriptive right belong to the public in
general but it belongs to an individual in particular.

STATUTES.        Secondly, Has the common law been repealed
by statute?   We have searched in vain for any
such statute.   We have been referred to certain fence
laws, stray laws, and laws regulating the running at large
of stock, [*Comp. L.*, 599, 600, 842, 843, 845, *et seq; Laws
of* 1864, 64; *Laws of* 1865, 91; *Laws of* 1866, 248;]
but none of these statutes repeals the common law in
this respect.   There is no statute that gives, or attempts
to give, to any person, any rights upon another's land,
whether it is fenced or not.   A statute of that kind
would tend to disturb vested rights, and be unconstitu-
tional and void.

As the plaintiffs claim that the owners of cattle have
a right to allow their cattle to run at large for the pur-
pose of grazing and subsisting on other people's lands,
we have examined the statutes to see what right the
legislature have attempted to confer upon one man to
take the grass of another, and find that every legislative
act with reference to the subject is for the protection of
the owner of the grass.   One act, [*Comp. L.*, 295, § 53;
*see also page* 567,] makes it a criminal offense to burn the
grass of another; and another act, [*Comp. L.*, 896, 897,
§§ 1, 3; *see also Gen. Stat.*, 1095, § 1,] makes it a criminal
offense to cut it down and carry it away, and gives the
owner of the grass treble damages, and it makes no dif-
ference whether the land is fenced or not.

There is no statute in this state that requires railroad
companies or others to fence their lands.

There is no statute that expressly authorizes cattle to

run at large anywhere, and there is no statute, as we think, that either expressly or impliedly authorizes them to run at large upon other people's land, the property of private individuals. It is true that the fence laws, stray laws, and the laws regulating the running at large of stock, already referred to, impliedly authorize cattle to run at large; but it cannot be supposed that the legislature thereby intended to authorize them to run at large on the private property of. individuals. The legislature cannot dispose of private property in that way. Private property can be taken by the legislature for *public use* only, and that after *just* compensation has been made for the same to the owner thereof. The legislature, by these acts, simply authorized cattle to run at large upon such *public* lands as they had a right to dispose of in that way.

FENCING.

These statutes, referred to, specify what shall be lawful fences, modify the common law in some respect as to the damages that shall be recovered, and the remedies that must be resorted to with respect to trespassing animals, and in some cases prohibit stock from running at large, and in other cases impliedly permit them to do so, and have probably so modified the common law that no action lies for injuries done on real estate by trespassing cattle unless such real estate is enclosed with a lawful fence.

The owner of real estate does not use reasonable and ordinary care and diligence to protect his property from the intrusion of roaming cattle unless he encloses it with a lawful fence. And if he receives any injury, through the want of such lawful fence, he is in about the same condition as though he received injury in any other way through his own negligence. He is like the man who has not used the proper diligence to collect a promissory

note, but has allowed the statute of limitations to run against it and bar its recovery. He is without a remedy. But because he is without a remedy—because he has forfeited his remedy by his own negligence, he has not thereby lifted up the wrongs and trespasses of others upon his own rights, to be moral virtues, or legal rights to be protected and encouraged by law, as seems to be supposed by the plaintiffs below in this case.

NEGLIGENCE: Diligence. The question of care and diligence on the one side, and negligence on the other, properly now comes up for consideration. This question presents a great many difficulties from the very nature of the subject itself, and courts and elementary writers have differed in opinion upon its various applications.

NEGLIGENCE. Negligence is variously defined. Bouvier defines it to be a "want of due diligence." [*Bouvier Law Dict.*, 12*th Ed.*] Broom defines it to be " The omission to do something which a reasonable man, guided upon those considerations which ordinarily regulate the conduct of human affairs, would do; or doing something, which a prudent and reasonable man would not do; negligence, moreover, not being absolute or intrinsic, but always relative to some circumstance of time, place or person." [*Broom's Legal Maxims*, 329.] In a case in England, decided in A. D. 1856, ALDERSON, B., defines negligence to be " Either the omitting to do something that a reasonable man would do, or the doing something that a reasonable man would not do; in either case causing mischief to a third party; not intentional, for then it would not be negligence." *Blythe v. Birmingham Water Works Co.*, 36 *Eng. Law and Eq. R.*, 506.

In the case of the Tonawanda R. R. Co. v. Munger, [5 *Denio*, 255,] the court said: " Negligence is a viola-

tion of the obligation which enjoins care and caution in what we do. But this duty is relative; and, where it has no existence between particular parties, there can be no such thing as negligence in the legal sense of the term; negligence, however, even when gross, is but an omission of duty."

As to the degree of negligence, it seems that in the case of Gill v. Iron Screw Collier Co., [12 *Jur.*, *N. S.*, 727] the court said that there is no difference between negligence and gross negligence. The latter being nothing more than the former with a vituperative epithet.

DEGREES OF.

Judge Curtis, in the case of the steamboat New World, *et al.*, v. King, [16 *Howard*, 469,] says: " The theory that there are three degrees of negligence described by the terms slight, ordinary, and gross, has been introduced into the common law from some of the commentators on the Roman law. It may be doubted if these terms can be usefully applied in practice. Their meaning is not fixed, or capable of being so. One degree, thus described, not only may be confounded with another, but it is quite impracticable exactly to distinguish them."

In the case of the Galena and Chicago Union R. R. Co. v. Jacobs, [20 *Ill.*, 478] the court say, that "All care or negligence is but relative, the absence of the highest possible degree of care, showing the presence of some negligence, slight as it may be."

Sir William Jones says of diligence, that " there are infinite shades, from the slightest momentary thought or transient glance of inattention to the most vigilant anxiety or solicitude;" and of negligence, that " there are infinite shades of default or neglect, from the slightest inattention or momentary absence of mind to the most

reprehensible supineness and stupidity." *Jones on Bail.*, 5, 7, 8.

Sir William Jones' definition is generally followed by the different authors on bailments, and is conceived to be correct in all cases; and while we have no means of measuring the infinite shades of diligence and of negligence, it is still absurd to attempt to abolish all distinctions for *that* reason alone.

There may be a high degree of diligence, a common degree of diligence, and a slight degree of diligence, with their corresponding degrees of negligence, and these can be clearly enough defined for all practical purposes, and with a view to the business of life, seems to be all that are really necessary.

DEFINITIONS. Common or ordinary diligence is that degree of diligence which men in general exercise in respect to their own concerns; high or great diligence is of course extraordinary diligence, or that which very prudent persons take of their own concerns; and low or slight diligence is that which persons of less than common prudence, or indeed of any prudence at all, take of their own concerns.

Ordinary negligence is the want of ordinary diligence; slight, or less than ordinary negligence is the want of great diligence; and gross or more than ordinary negligence is the want of slight diligence.

These definitions we have taken from the different works on Bailments, and Bouvier's Law Dictionary. We are not sure that in a popular sense these definitions of negligence, are entirely correct. If it were shown to a jury, that a man had in any given case exercised ordinary care and diligence, we apprehend the jury, with their views of what negligence is, would differ as to the degree of negligence, if any, the man was guilty of.

As every man, however careful and prudent he may be, is usually guilty of some degree of negligence; and as every man, who has exercised ordinary care and diligence, is also guilty of that degree of negligence which men are ordinarily guilty of in the management of their own affairs, a part of the jury would say, that such a man was guilty of ordinary negligence.

While another part of the jury would say, that as negligence is only an omission of duty, that a man who has exercised ordinary care—the care which men in general ordinarily exercise in their own affairs—is not negligent at all; that he is without fault.

Both portions of the jury, however, would be in error under the legal definition; for, under that definition, whoever has exercised ordinary care, and no more, is always guilty of slight negligence.

Whoever exercises slight care, and no more, is guilty of ordinary negligence; whoever exercises less than slight care is guilty of gross negligence, and may be guilty of willful and wanton wrongs.

Whoever exercises great care is guilty of less than slight negligence, and may not be guilty of any negligence at all.

QUESTION OF FACT Negligence is a question of fact for the jury. It is for them to determine whether there has been any negligence, and its nature and degree. Even where the circumstances are all admitted, if there is any doubt as to what they prove, it is still a question for the jury. It is not the duty of the court to draw inferences from the evidence, but only to pronounce legal conclusions from facts admitted, or properly found. But if the proof is all one way, or if there is no controversy about he facts, then it becomes a question of law for the court

to determine. *Redf. Railw.*, § 126, *Nos.* 13, 14; *id.*, § 197, *No.* 11; 21 *Barb.*, 489; 28 *Eng. Law and Eq.*, 48; 19 *Conn.*, 566.

Of Law.          It is also a question of law for the court to determine, what degree of care and diligence on the one side, and of negligence on the other, will entitle the plaintiff to recover.

To allow cattle to run at large may be gross negligence in one place, yet reasonable care in another; whether the plaintiffs below were guilty of negligence or not in allowing their cattle to run at large, was properly submitted to the jury. The court below, therefore, did not err in its instruction numbered 7, as is claimed by the plaintiffs in error.

Negligence: Remote.          Negligence is a negative principle. It is the want or the absence of due care or due diligence, or the omission to perform some duty. It is not the negligence itself that causes the injury, but it is leaving something undone whereby something else comes in and causes the injury. Negligence, then, must always, of necessity, be more or less remote. It, of course, has various degrees or shades of remoteness, but the law has, as yet, not undertaken to distinguish or define these different degrees of remoteness, or to determine what degree will make one party liable or enable the other party to recover. It is a question that will probably always have to be left, along with other circumstances of the case, to the jury. It enters into the case as one of the circumstances upon which a jury is to determine whether the act is negligent or not, and if negligent, what the degree of the negligence is. An act that may be grossly negligent, if it proximately contributes to the injury, may be reasonably careful, if it only remotely contributes thereto.

The court below therefore erred in its charge to the jury, given as asked for by the plaintiffs, numbered 2, where it tells the jury that if the plaintiffs were guilty of negligence at all, the negligence was so remote that it would not preclude the plaintiffs from recovering the full extent of their injury. The court by this charge substantially finds for the jury that the plaintiffs exercised reasonable and ordinary care in the protection of their cattle. It should have submitted the question to the jury instead of deciding it.

NEGLIGENCE OF Plaintiff. The defendants below claimed that, in order for the plaintiffs to recover for the injuries to their cattle, they should not only be without fault on their part, but also should be free from all negligence. The defendants, therefore, submitted at least one instruction to the court (numbered 4) embodying this principle, and requested the court to give it to the jury. The court properly refused to do so. Upon this question, however, it seems that courts have differed in opinion. In one sense, this instruction may be nearly correct; for, whoever exercises ordinary care and prudence in the management of his affairs may be said, in one sense, to be free from negligence and without fault and, unless he does exercise this degree of care and prudence, he cannot, as a general rule, recover. But even this rule has its exceptions, for in a case where the wrong on the part of the defendant is so gross and wanton as to imply a willingness to inflict the injury, or where the plaintiff is in the proper use of his own property and cannot, by the exercise of ordinary care, avoid the consequences of the defendant's negligence, the plaintiff may recover, notwithstanding his own ordinary neglect.

But this sense is not the one in which this instruction was intended to be used.

The instruction is open to at least two objections. First, it asks the *court to find* that the plaintiffs were negligent in allowing their cattle to run at large in the vicinity of a railroad which was not fenced. Secondly, it asks the court to find that this negligence, *however slight,* is sufficient to bar a recovery.

It is undoubtedly true, under the definition of negligence as given by Sir William Jones, and also given in the 20th Ill., 478, already cited—(and this is the sense in which this instruction was likely to be understood by the jury)—that the plaintiffs were guilty of some negligence; but it is not necessary in order to enable them to recover for injuries done to their cattle through the negligence of the defendants, that they be entirely free from all negligence themselves. If their negligence is slight and that of the defendants is gross, or if theirs is remote and that of the defendants is the proximate cause of the injury, they may recover notwithstanding their own slight or remote negligence.

CARE OF DE-fendants. The next question is, what degree of care and diligence should the defendants have exercised so as to avoid injury to the plaintiff's stock?

We have already seen that whenever one party uses ordinary care and diligence to protect his own property from injury, and does not infringe upon the rights of others, he has a right to demand that every other person shall do the same thing towards him. But, whenever he does not use such care and diligence, or, whenever he infringes upon the rights of others, his negligence or his wrong doing, as the case may be, absolves others from using ordinary care and diligence towards him. And, particularly, they are under no legal or moral obligation, to be cautious and circumspect towards him who infringes upon their rights.

Whether the plaintiffs exercised ordinary care and diligence may be questionable. If they turned their cattle out immediately upon the railroad we should think they were guilty of gross negligence; but, if they turned them out at a distance from the road, so that the chances were that the cattle would seldom or never wander upon the railroad track, we think they exercised ordinary care and diligence. But assuming that they exercised ordinary care and diligence, then did they infringe upon the rights of the defendants or not? If they did, no amount of care, or skill, or diligence, ordinary or extraordinary on their part, in the protection of their own property, can excuse them. They are bound by all the principles of morality, of equity, and of justice to so use and enjoy their own property as not to injure the rights of others. The most that they can claim under such circumstances is, that the defendants shall exercise slight care and be held liable only for gross negligence. But, if the plaintiffs knowingly allowed their cattle to run and graze on the lands of the railroad company in the vicinity of the railroad track, without the consent of the company, thereby endangering the lives and property of passengers and others, they can recover only for injuries done to their cattle through the most gross and wanton negligence of the railroad company.

In the case of Munger v. the Tonawanda R. R. Co. [4 *N. Y.*, 349] the court says: "The plaintiff before he can stand in court as an accuser, must himself be free from fault. He cannot support his action by basing it partly on his own wrong and partly on the wrong of his adversary. He is answered when it appears that he has been wanting in duty, or has contributed to his own injury. He has then volunteered to suffer, and the law

sees no wrong in the case,—that whenever it appears that the plaintiff's negligence or wrongful act had a material effect in producing the injury, or substantially contributed towards it, he is not entitled to recover." The plaintiffs did infringe upon the defendant's rights. They were wrong-doers themselves. They were first in fault. Hence under any circumstances the defendants are absolved from all but slight care, and are liable only for gross or wanton negligence.

Hence it was error for the court below to charge the jury that the defendants were liable if the cattle were killed through a want of *usual* and *ordinary* care and caution on the part of the defendants. *See charge Nos. 4, 5, and 6, and also No. 1 of the charge given on request of plaintiffs, and No. 1 of the charge as modified from the charge requested by the defendants.*

And it was also error for the court below to refuse to charge the jury that the defendants were not liable unless the cattle were killed through the *gross* negligence of the defendants. [*See charge No. 2, requested by defendants and refused.*] In fact, the charge, taken together as a* whole, was erroneous, for it was given up on the erroneous theory that the defendants were required to exercise *ordinary* care and caution towards the plaintiffs' cattle, and were liable for *ordinary* negligence.

It is of the utmost importance that railway tracks be kept free and clear from all obstructions, so that trains may be punctual in all their arrivals and departures, and may make all their various connections with unerring certainty. The business of the country demands it; the traveling public demands it; the post office department and the reading public demand it; and human life and human security demand it.

By what right do the owners of trespassing cattle stop trains and endanger the lives of human beings? By what right do they increase the risk of railroad companies by making it more hazardous for them to run their trains?

We have examined the following authorities:   4 *N. Y.*, 349; 16 *id.*, 476; 8 *Barb.*, 427; 11 *id.*, 112; 13 *id.*, 493; 14 *id.*, 369; 22 *id.*, 574; 37 *id.*, 516; 19 *Wend.*, 399; 21 *id.*, 615; 8 *Johns.*, 421; 19 *id.*, 385; 1 *Cow.*, 78, *note;* 6 *id.*, 189; 5 *Hill,* 282; 6 *id.*, 592; 5 *Denio*, 255; 19 *Penn.*, 203, 298; 24 *id.*, 465; 44 *id.*, 375; 49 *id.*, 186, 192, 193; 8 *Barr,* 366; 2 *Metc.* [*Ky.*,] 177; 14 *Ben. Monroe,* 75; 2 *Mich.*, 259; 7 *Metc.* [*Mass.*,] 274; 12 *id.*, 415; 6 *Allen,* 87; 1 *id.*, 16, 187, 493; 14 *Gray,* 466; 3 *Ohio S.*, 172; 4 *id.*, 424, 474; 11 *id.*, 333, 337; 13 *id.*, 67; 5 *Gilm.*, 130; 13 *Ill.*, 585, 609; 16 *id.*, 198; 20 *id.*, 221, 478; 17 *id.*, 131, 541, 580; 28 *id.*, 17, 513; 29 *id.*, 447; 30 *id.*, 117; 31 *id.*, 304; 38 *id.*, 424, 280; 6 *Ind.*, 141; 9 *id.*, 290; 14 *id.*, 317; 18 *id.*, 215; 24 *id.*, 402; 22 *id.*, 26; 25 *id.*, 185; 26 *id.*, 76, 370, 443; 27 *id.*, 96; 3 *Iowa*, 396; 5 *id.*, 490; 10 *id.*, 268, 396; 16 *id.*, 6; 17 *id.*, 461; 20 *id.*, 188, 219; 21 *id.*, 20; 24 *Vt.*, 487; 25 *id.*, 150; 29 *Me.*, 307; 1 *Foster* [*N. H.*] 363; 14 *Conn.*, 2, 293; 19 *id.*, 566; 27 *id.*, 479; 16 *id.*, 200; 26 *Mo.*, 441; 12 *Cal.*, 535; 18 *id.*, 351; 9 *Wis.*, 202, 215; 13 *id.*, 637; 10 *Rich.*, 227; 24 *Ala.*, 21; 25 *id.*, 229; 2 *Eng. Law and Eq.*, 289; 12 *id.*, 520; 36 *id.*, 506; 16 *How.*, 464.

Some of these authorities are applicable to one part of the case, and some to another, and some of them are not applicable to the case at all; but we have examined them because we were referred to them.

The principal question in this case is: What degre of care and caution should the railroad company have exer-

cised so as to avoid injury to the plaintiffs' cattle? Upon this question we think we have followed the weight of authority as well as of reason. It is true that the decisions in New York, and Pennsylvania, and some other states, go beyond us in one direction, while the decisions in Ohio, and some other states, go beyond us in the other direction.

In this case the court below followed the Ohio decisons. And hence it becomes necessary for us to show that the law as understood in Ohio upon this question is not law in Kansas. The principle reason for the difference is that in Ohio "the common law has no force, except so far as it derives authority from judicial recognition in the practice and course of adjudication in the courts," [3 O. S., 178] while in Kansas the common law exists by force of statutory enactment, and the courts have no authority to construe it away. There is no State in the Union, that we are aware of, where the common law is in force, and where the courts have decided this question as it has been decided in Ohio.

While the doctrine as maintained in Ohio upon this question may be good law there, and in every other state where the common law is not in force, yet it is not good law in Kansas or any other state where the common law is in force. And to attempt to adopt it in Kansas would lead to many absurdities, some of which we have already pointed out, and others which we will hereafter point out.

BAILMENTS.          It is the universal law of bailments that where the bailment is for the benefit of both parties, the bailee is required to exercise ordinary care, and is liable for ordinary negligence.

Where the bailment is for the benefit of the bailee alone, he is required to exercise great care, and is liable for slight negligence.

But where the bailment is for the benefit of the bailor alone, the bailee is required to exercise slight care only, and is liable for gross negligence only.

Now, if the railroad company had taken these cattle as a bailment to pasture them for a reward, they would be held to exercise ordinary care and be liable for ordinary negligence; but if they were not to have any reward, then they would be held to exercise only slight care, and be liable for only gross negligence.   As their compensation is taken away the care that they are required to exercise is diminished.   On the other hand it is admitted to be the law wherever the common law is in force, that if these cattle were pastured upon the company's land as trespassers—the company in such a case having the right to obtain compensation therefor by means of an action of trespass—they would in no case be required to exercise more than slight care, nor be liable for less than gross negligence.

Then shall we say: that, whenever the company's right to compensation is taken away by taking away their right to an action of trespass, they shall be required to exercise ordinary care, and be liable for ordinary negligence; that as their compensation is taken away the care that they must exercise shall be increased; that as their rights are diminished their burdens shall be augmented.   Or shall we allow the owners of the cattle to say to the railroad company; "Here, we intend to turn our cattle out to pasture upon your lands; consent to it and become gratuitous bailees, and you shall be required to exercise only slight care, and be liable only for gross negligence; but if you do not consent then you shall exercise ordinary care, and be liable for ordinary negligence."

And for the purpose of encouraging all men to do

right and be just, shall we say to them: "If you want to pasture your cattle on other people's land, obtain the consent of the owners first, for if you do not and your cattle trespass upon their lands, they will be required to exercise ordinary care towards them, which is greater care than they would be required to exercise were you to get their consent first and make them your gratuitous bailees, and which is as great care as they would be required to exercise were you to get their consent first and pay them for it, whether you make them your bailees or not."

We are aware that the two cases of cattle pasturing upon another's land as trespassers and pasturing there by agreement of the parties as a bailment or otherwise, are not parallel cases in every respect.

They are parallel to this extent, and probably no further: every owner of land, whether he be a bailee or not, and whether the cattle are trespassers or not, must exercise some care, slight, ordinary, or great, as the case may be, towards the cattle pasturing upon his land, so that no injury may result to them from any negligent act of his.

This is a kind of negative care. A bailee's duty, however, as to care, extends beyond this. He must exercise an affirmative care over them. He must see that they do not wander or stray, and that they are not injured by others, etc. But we can see no reason why the difference between the two cases should destroy the analogy between them so far as it goes, or should destroy the argument founded upon that analogy.

The court below also erred in refusing to grant a new trial for the errors above mentioned.

We do not think it is necesary to discuss the other assignments of error.

The judgment of the court below is reversed, and the cause remanded, with the order that the court below grant a new trial and proceed in the case as though no trial had ever been had therein.

All the justices concurring.

1. REAL ESTATE: FEE.—Every person who owns real estate, in fee simple, is the exclusive owner, and entitled to the exclusive possession thereof.